LOUIS A. GONZALEZ, JR. (SBN 157353)
DAVID A. DIEPENBROCK (SBN 215679)
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:    916.558.6000
Facsimile:    916.446.1611
Email: lgonzalez@weinstraub.com
            ddiepenbrock@weintraub.com

Attorneys for Plaintiff,
BUGATTO SACRAMENTO PROPERTIES, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUGATTO SACRAMENTO PROPERTIES, INC., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO, a municipal corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR**<br>**(1) FIFTH AMENDMENT TAKING**<br>**(2) DECLARATORY JUDGMENT**<br>**(3) INVERSE CONDEMNATION**<br><br>DEMAND FOR JURY TRIAL |

{4364019.DOCX:6}

COMPLAINT

For its Complaint against Defendant City of Sacramento ("City"), Plaintiff Bugatto Sacramento Properties, Inc. ("Plaintiff" or "Bugatto") alleges as follows:

## PARTIES

1. At all times relevant herein, Plaintiff Bugatto Sacramento Properties, Inc. has owned a 2.25-acre parcel of real property ("**Subject Property**"), located on the corner of 5th Avenue and 1st Street, located in the City of Sacramento.

2. Defendant City of Sacramento is a municipal corporation, organized and existing under a Charter adopted and from time to time amended, pursuant to Article XI, § 3 of the Constitution of the State of California.

## JURISDICTION AND VENUE

3. This action is based upon, and seeks to redress violations of, the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Fifth Amendment to the United States Constitution; and the Fourteenth Amendment to the United States Constitution, caused by Defendants acting under color of law. Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, in that this action arises under the Constitution and laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims. The claims presentation requirements of California's Government Claims Act are inapplicable to (i) claims for non-monetary relief brought under state law, and (ii) claims seeking monetary or non-monetary relief under 42 U.S.C. § 1983.

4. This Court has personal jurisdiction over Defendant. On information and belief, Defendant transacts business in the state of California by, among other things, performing governmental functions, operating, and otherwise furnishing services or selling goods in this state and within this judicial district.

5. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. The conduct complained of herein occurred within this district, and the property at issue in this action is likewise located in this district. The City of Sacramento is located within this district and subject to personal jurisdiction in this district. Defendant maintains its principal place of business in this district.

/ / /

**FACTUAL ALLEGATIONS**

6. Plaintiff has owned fee title to the Subject Property since 1998.

7. Since at least the 1980s, the Subject Property was used for wholesale distribution and cold storage of frozen fish. The Subject Property contained five (5) buildings. The main building was located on the western half of the Property (the "Brick Building") and located on the corner abutting 5th Street and 1st Avenue, which is one block south of Broadway. The Brick Building was primarily used for the cold storage of frozen fish in large industrial freezers and their distribution to wholesale customers. The remaining buildings to the east of the Brick Building consisted of four warehouses used for various business-related purposes. The Subject Property is bounded on the east by the Alder Grove public housing development.

**A.     The Subject Property Falls Victim to The City's Vagrancy Problem**

8. The City has allowed a vagrancy problem to persist in the neighborhood, principally along, Broadway, W Street and X Street and underneath Highway 50. Since at least 2016, Plaintiff has experienced ongoing problem with criminal activity and vagrant trespass and occupancy on the Subject Property. The vagrant and trespass activity on the Subject Property has worsened since the City established the "Safe Ground campsite" in 2020 two blocks away from the Subject Property. For example, multiple vehicles have been brought onto the Subject Property by trespassers and abandoned both outside and inside the warehouse buildings. The buildings on the Subject Property have been repeatedly tagged with graffiti and the warehouse buildings have been set on fire by vagrants. Plaintiff repeatedly attempted to repair the damage caused by and to prevent these activities from occurring on the Subject Property.

9. Plaintiff repeatedly sought the assistance of the City's law enforcement in removing trespassers and vagrants. The City's law enforcement largely ignored these petitions, even going so far as to claim that an officer would not respond unless it was that particular vagrant's third instance of trespassing on the Subject Property.

10. The Subject Property was managed by an on-site manager during normal business operations. Beginning in 2019, Plaintiff hired a security company to provide four randomized nightly patrols of the Subject Property. Despite these security services, the on-site manager repeatedly

discovered the presence of vagrants in the warehouse buildings. These trespassers continued to gain access into the warehouse despite Plaintiff's continued efforts to board up and seal windows, doors, and other openings that have been created, including openings made by cutting into and through exterior walls.

11. As noted above, the vagrancy and trespass resulted in fires at the Subject Property. Communications with the City's Fire Department, confirmed each fire that has occurred at the Property was started by some unknown trespasser on the Subject Property. In fact, one fire was intentionally set by a trespasser who had been roused when he knew a contractor's crew was inside assessing damage to the Brick Building. Despite Plaintiff reporting this act of arson with the intent to cause physical harm to the crew to the City and providing an eye witness, the City failed to investigate or prosecute the incident.

12. The City refused to respond to and address the onslaught of vagrant and criminal activity in the area. Rather than respond to Plaintiff's lawful requests for assistance with the homeless, the City chose to place blame for the homeless, as a matter of policy, on Plaintiff as the owner of the Property. That policy decision was a result of the City recognizing its failure to properly respond to complaints from property owners.

13. After having left Plaintiff and other property owners on their own without the assistance of the City government in responding to the onslaught of vagrant and criminal activity in the area, the City then set out to declare the Subject Property a public nuisance and its structures in a dangerous condition after failing to provide requested aid to Plaintiff.

14. Beginning in September 25, 2019, the City began issuing notices and orders and levying fines and imposing "monitoring costs" related to the buildings on the Subject Property claiming code violations made them dangerous and constituted a public nuisance on property, *and recording liens against the property* for these costs. So, rather than respond to requests for law enforcement and address the root of the problem, the City instead would send its administrative employees to the Property to catalog the damaged caused by the vagrants and trespassers, cite and fine Plaintiff and charge for the City's employee time.

/ / /

15. These occurrences of vagrant and criminal activity at the Subject Property only worsened with the Covid-19 pandemic when the City established its first designated homeless camp site just two blocks from the Subject Property. The camp site was continually turning away would be campers due to being at capacity.

16. As a result of this unyielding onslaught of vagrant and criminal activity on the Subject Property, the City's refusal to ameliorate the issues yet continuing to issue citations and levy monitoring fees and fines against the Subject Property, Plaintiff incurred continuous and ever-increasing expenses associated with attempting to maintain the Subject Property.

17. On August 25, 2020, the City adopted the West Broadway Specific Plan ("Specific Plan"), which changed the zoning of the Property from light industrial/commercial to medium density housing. When the Specific Plan was first adopted, this change in zoning was not a concern to Plaintiff because it intended to continue its pre-existing uses of the Subject Property.

18. However, as alleged above, the vagrancy and trespass issues became worse, and the City began issuing notices and orders and levying fines and imposing "monitoring costs" related to the buildings on the Subject Property, claiming code violations made them dangerous and constituted a public nuisance on the Subject Property, and recording liens against the Subject Property for the fines and costs being levied.

19. In March 2021, the City filed a Code enforcement action against Plaintiff, blaming it for failing to prevent the trespass and vandalism of the Subject Property that also resulted in fires. In addition to seeking to declare the Subject Property a public nuisance with dangerous buildings, the City sought an order to demolish the buildings on the Subject Property and to recover its enforcement costs. Plaintiff denied the allegations and contested the Code enforcement action.

20. The City, in seeking demolition of the structures, directed Plaintiff to submit an application to rebuild. The City, however, would not allow Plaintiff to rebuild the structures for their existing uses, but instead required Plaintiff to submit a permit application to convert the Subject Property for housing due to the City's adoption of the Specific Plan.

21. As a result of the City lawsuit and the continuing damage caused to the Subject Property by the vagrancy and trespass issues, Plaintiff was forced to shut down its business

operations. Plaintiffs communicated that decision to the City and advised City officials that Plaintiff would be selling the Subject Property.

22. In 2022, Plaintiff entered into an agreement to sell the Subject Property to a Buyer for $5,100,000. The sale was conditioned on the Buyer obtaining City approvals to construct housing on the Subject Property.

### B. City Officials Demand an Unlawful Dedication

23. During the Buyer's due diligence period, the Buyer reported to Plaintiff that the City would require, as a condition of any development Subject Property, the dedication and construction of a land-locked segment of 6th Street ("6th Street Dedication"). At present, 6th Street does not cross Broadway, and no portion of 6th Street exists to the South of the Subject Property. To the North of the Subject Property there are long-established operating businesses located where 6th Street would extend south of Broadway to connect to the northern property line of the Subject Property. To Plaintiff's knowledge, the City has not begun any eminent domain proceedings against the Subject Property or the surrounding properties related to the extension of 6th Street. Imposition of this development condition would therefore create a "street-to-nowhere" for the foreseeable future. The 6th Street Dedication also would have a devastating impact on the Subject Property because it would bisect the parcel, severing off approximately 25% of the Subject Property to create an island, and substantially devaluing the remainder located to the west of the 6th Street Dedication.

24. Plaintiff contacted the City Manager inquiring whether the City would require, as a condition of any development of the Subject Property, the dedication and construction of the 6th Street Dedication; and if so, whether it would compensate Plaintiff for the taking. The City Manager directed Plaintiff to the City's Planning Director, who wrote Plaintiff stating that the City would require, as a condition of any development of the Subject Property, the construction of the 6th Street Dedication, and that the City would not provide any compensation to Plaintiff for the dedication. Plaintiff subsequently sought confirmation from the City Manager that the position articulated by the Planning Director reflected the City's official position and policy. To date, the City Manager has not responded to Plaintiff's confirmation request.

///

25. As a result of the Planning Director stating that the City would condition development of the Subject Property on the construction of the 6th Street Dedication, Plaintiff was forced to reduce the purchase price for the Subject Property from $5,100,000 to $4,100,00, to account for the loss of 25% of buildable area.

26. Plaintiff's buyer subsequently submitted a development application for housing on the Subject Property that included the 6th Street Dedication, which is a 53-foot-wide roadway for the 6th Street Dedication that needlessly bisects the Property. The 6th Street Dedication does not offset any impacts from the proposed development because there is adequate access to public roadways from 5th Avenue and from 1st Avenue. Separate and apart from the 6th Street Dedication, the Buyer's development application included improvements that mitigate for the proposed project's actual impacts.

27. Aside from a map showing the 6th Street extension south of Broadway, the Specific Plan only requires private developers to fund public facilities, such as street and streetscape improvements, if their new development project creates the need for those additional public facilities. (Specific Plan at 10-1).

28. Despite providing these general assurances of reasonableness, the City has taken the position that it is entitled to extract all the land for the 6th Street Dedication and expense for the construction of this community-serving public road from Plaintiff, even though the 6th Street Dedication is not needed for the proposed development on the Subject Property, and would mitigate no impacts from redeveloping the Subject Property with housing.

## FIRST CLAIM FOR RELIEF

**(42 U.S.C. § 1983 – Unlawful Taking of Property)**

*Against the City of Sacramento*

29. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the foregoing paragraphs as though fully set forth in this place.

30. The City of Sacramento is a charter city, organized under the laws of the State of California, and is a state actor within the meaning of 42 U.S.C. § 1983.

///

31. When the government wants to take private property to build roads, courthouses, or other public projects, it must compensate the owner at fair market value. The just compensation requirement comes from the Fifth Amendment's Takings Clause, which provides: "nor shall private property be taken for public use, without just compensation." By requiring the government to pay for what it takes, the Takings Clause saves individual property owners from bearing "public burdens which, in all fairness and justice, should be borne by the public as a whole."

32. When it comes to land use permits, the Supreme Court of the United States has developed the two-part *Nollan/Dollan* test to determine whether permit conditions amount to a taking. First, permit conditions must have an "essential nexus" to the government's land-use interest, ensuring that the government is acting to further its stated purpose, not leveraging its permitting monopoly to exact private property without paying for it.  Second, permit conditions must have "rough proportionality" to the development's impact on the land-use interest and may not require a landowner to give up (or pay) more than is necessary to mitigate harms resulting from new development. A permit condition that requires a landowner to give up more than is necessary to mitigate harms resulting from new development can effect a taking just as much as a condition that is unrelated to the proposed development.

33. The 6th Street Dedication fails both prongs of the *Nollan/Dollan* test. It fails the first prong because there is no "essential nexus" between developing housing on the Subject Property and the 6th Street Dedication. The 6th Street Dedication is designed and envisioned to accommodate traffic coming from many blocks away. Existing roads can easily handle all of the traffic created by developing housing on the Subject Property. On its face, the City is leveraging its permitting monopoly to exact the 6th Street Dedication without paying for it because there is no nexus between the proposed development of the Subject Property and the Sixth Street Dedication.

34. Conditioning development of the Subject Property upon dedication of the 6th Street Dedication also clearly fails the "rough proportionality" test.  6th Street does not presently cross Broadway, and no portion of 6th Street exists to the South of the Subject Property. To the North of the Subject Property there are long-established operating businesses located where 6th Street would need to extend south of Broadway to connect to the northern property line of the Subject Property.

The 6th Street Dedication would therefore create a land-locked "street-to-nowhere" for the foreseeable future. The 6th Street Dedication would have a devastating impact on the Subject Property because it would bisect the parcel, severing off approximately 25% of the Subject Property to create an island, and substantially devaluing the remainder located to the west of the 6th Street Dedication. There is no proportionality at all between the 6th Street Dedication and the proposed development.

35. As alleged herein, the City, acting under color of state law, has imposed an unconstitutional exaction or taking of Plaintiff's property in violation of Plaintiff's rights under 42 U.S.C. § 1983.

36. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been damaged in an amount according to proof at trial.

37. Plaintiff is entitled to recover attorneys' fees under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF

(Declaratory Judgment - 28 U.S.C. § 2201)

*Against the City of Sacramento*

38. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the foregoing paragraphs as though fully set forth in this place.

39. A justiciable controversy exists between the parties as to whether the City has the power to condition development of the Subject Property upon the dedication and construction of the 6th Street Dedication, without the City providing any compensation.

40. Fed R. Civ. P. 57 and 28 U.S.C. § 2201 provide this Court with the authority to declare the rights and other legal relations of the Parties with respect to this controversy.

41. Plaintiff seeks a finding and declaration that the City does <u>not</u> have the power to condition development of the Subject Property upon the dedication and construction of the 6th Street Dedication, without the City providing just compensation.

WHEREFORE, Plaintiff prays for judgment as set forth below.

/ / /

## THIRD CLAIM FOR RELIEF

### (Inverse Condemnation - California Constitution art. I, § 19)

*Against the City of Sacramento*

42. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the foregoing paragraphs as though fully set forth in this place.

43. An action for inverse condemnation lies against a public agency that has acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation.

44. The City Manager has thus far taken no action to disavow the Planning Director's pronouncement that development of the Subject Property would be conditioned upon the 6th Street Dedication. Plaintiff is therefore informed and believes and thereon alleges that it is now the official policy of the City to require the 6th Street Dedication as a condition of developing the Subject Property. As alleged herein, the 6th Street Dedication clearly fails the *Nollan/Dollan* test to such an extent that it is wholly unreasonable for the City to have failed and refused to initiate eminent domain proceeding to take that land from Plaintiff, and to pay it just compensation.

45. Plaintiff alleges on information and belief that the City's conduct, as alleged herein, effected a taking or damaging of the Subject Property, without just compensation.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1. For a finding and declaration that the City does not have the power to condition development of the Subject Property upon the dedication and construction of the 6th Street Dedication, without the City providing any compensation.

2. For costs of suit.

3. For an award of attorneys' fees under 42 U.S.C. § 1988.

4. For reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees on the Third Claim for Relief under C.C.P. § 1036;

/ / /

5. For any additional or further relief as allowed by law or determined to be just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 29, 2024

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

By: */s/ David A. Diepenbrock*
Louis A. Gonzalez
David A. Diepenbrock
Attorneys for Plaintiff
Bugatto Sacramento Properties, Inc.