SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**GÖKALP Y. GÜRER, Senior Deputy City Attorney (SBN 311919)**
ggurer@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA 95814-2608
Telephone: (916) 808-5346
Facsimile: (916) 808-7455

Attorneys for the CITY OF SACRAMENTO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUGATTO SACRAMENTO PROPERTIES, INC., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO, a municipal corporation,<br><br>Defendant. | Case No.: 2:24-cv-02051-TLN-AC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SACRAMENTO'S MOTION TO DISMISS**<br><br>**Date:** October 3, 2024<br>**Time:** 2:00 p.m.<br>**Courtroom:** 2<br>**Judge:** Hon. Troy L. Nunley |

Defendant CITY OF SACRAMENTO (the "City") hereby moves to dismiss, without prejudice, the Complaint filed by plaintiff BUGATTO SACRAMENTO PROPERTIES, INC. because this matter is not ripe for litigation.

## I. INTRODUCTION

This matter involves a pending real estate development application submitted by the buyer of plaintiff's 2.25-acre parcel of land.

The parcel is located at the intersection of 5th Street and 1st Avenue just south of the Broadway corridor in Upper Land Park. One block northeast of the property is 6th Street, which comes to an end where it meets the Broadway corridor. Pursuant to the West Broadway Specific Plan adopted by the City in 2020, it is proposed that 6th Street extend south as part of a north-south grid extension. Accordingly, if 6th Street is to extend southward then any proposed development of plaintiff's parcel may thus be required to include a 6th Street roadway dedication. And because the area was re-zoned from light industrial/commercial to medium density housing, plaintiff opted to sell the parcel to a buyer for $5,100,000, and that buyer subsequently submitted a development application proposing to build housing on this parcel. Plaintiff alleges, however, that the City refuses to compensate the buyer for this roadway dedication, and plaintiff claims it was thus forced to reduce the price on the parcel from $5,100,000 to $4,100,000 to account for the "loss" of 25% buildable area. Plaintiff now sues the City to recoup the difference based on the City's alleged "taking."

The issue, though, is that there has been no taking, regulatory or otherwise: the buyer's application is still pending. No final decision has been made by the City. It is therefore premature to adjudicate whether the City's proposed condition does or does not constitute an unlawful taking. When a final decision is eventually made on the application, then plaintiff will of course be free to re-initiate this action if it believes an unlawful taking has occurred. Until then, however, it is too early to consider any of plaintiff's three claims for relief.

The City thus respectfully requests the Court dismiss the Complaint without prejudice until such time as these issues are ripe for litigation.

//

## II.   ALLEGATIONS, CLAIMS, AND RELIEF SOUGHT

Plaintiff owns a 2.25-acre parcel of real property located at the corner of 5th Avenue and 1st Street in Sacramento, California. (Complaint at ¶¶ 1, 6.) The five-building property is used for the storage and wholesale distribution of frozen fish. (*Id.* at ¶ 7.) On August 25, 2020, the City adopted the West Broadway Specific Plan, which, *inter alia*, re-zoned the area surrounding and on plaintiff's property from light industrial/commercial to medium density housing. (*Id.* at ¶ 17.) Plaintiff intended to continue its pre-existing uses of the property re: fish storage and distribution and thus did not consider the zoning change to be an issue. (*Id.*)

In March of 2021, however, the City filed a code enforcement action against plaintiff based on certain code violations and sought an order to demolish the buildings. (*Id.* at ¶ 19.) The City directed plaintiff to submit an application to rebuild the property and also required plaintiff, in so doing, to submit a permit application to convert the property for housing in compliance with the re-zoning. (*Id.* at ¶ 20.) Plaintiff opted instead to shut down its business and sell the property. (*Id.* at ¶ 21.) Accordingly, in 2022, plaintiff entered into an agreement to sell the property for $5,100,000. (*Id.* at ¶ 22.)

During the buyer's due diligence period, the buyer reported to plaintiff that the City is requiring the dedication and construction of a land-locked segment of 6th Street as a condition of developing the parcel. (*Id.* at ¶ 23.) Plaintiff contacted the City Manager to confirm whether the City would require the 6th Street dedication as reported by the buyer, and, if so, whether the City would compensate plaintiff for the dedication. (*Id.* at ¶ 24.) Plaintiff was directed to the City Planning Director, who allegedly wrote to plaintiff confirming the required 6th Street dedication and confirming that plaintiff would not be compensated for the dedication. (*Id.*) Plaintiff relayed this back to the City Manager, asking for final confirmation as to whether this alleged statement by the City Planning Director reflected the City's official position and policy. (*Id.*) The City Manager has not responded as of the Complaint's filing. (*Id.*) Based solely on the City Planning Director's alleged statement to plaintiff regarding a potential 6th Street dedication, plaintiff reduced the purchase price on the property from $5,100,000 to $4,100,000 to account for the "loss" of 25% buildable area. (*Id.* at ¶ 25.)

Plaintiff's buyer subsequently submitted a development application for housing on the property that includes the 6th Street dedication. (*Id.* at ¶ 26.) As of the Complaint's filing, the buyer's development application is still pending. (*See generally*, Complaint.) No final decision has been made. (*See generally, id.*)

Based on these allegations, plaintiff asserts three claims: (1) Unlawful Taking of Property in violation of the Fifth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983; (2) Declaratory Judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201; and (3) Inverse Condemnation in violation of Article I, Section 19 of the California Constitution. (*See generally*, Complaint.)

Plaintiff seeks, *inter alia*, "a finding and declaration that the City does not have the power to condition development of the Subject Property upon the dedication and construction of the 6th Street Dedication, without the City providing any compensation." (Complaint at p. 10, Prayer for Relief.)

### III. ARGUMENT

#### a. Legal Standard for a Motion for to Dismiss Pursuant to Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move the court for an order dismissing a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Article III, Section 2 of the United States Constitution extends federal judicial power to certain "Cases" or "Controversies." (U.S. Const. Art. III, § 2.) The case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that claims be "ripe" for adjudication. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The ripeness doctrine is a means by which federal courts dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur. *Id.* at 1122. And because the issue of ripeness pertains to federal courts' subject matter jurisdiction, the issue is properly raised in a Rule 12(b)(1) motion to dismiss. *Id.; St. Clair v. City of Chico*, 880 F.2d 199, 202 (9th Cir. 1989) ["As we made clear in *Herrington v. County of Sonoma*, 857 F.2d 567 (9th Cir. 1988), the issue of ripeness has nothing to do with the merits of claims … the district court did not err in deciding the ripeness issue under the terms of Fed. R. Civ. P.

12(b)(1)."].

Although it is defendants that move to dismiss under Rule 12(b)(1), it is the plaintiff who invokes a court's jurisdiction in the first place so it is therefore the plaintiff's burden to establish subject matter jurisdiction in opposing a motion to dismiss. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994) ["It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."].

In this regard, a Rule 12(b)(1) motion to dismiss may be made on the basis that the complaint (together with any judicially noticed facts) fails to establish grounds for federal subject matter jurisdiction as required by Rule 8(a)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see, e.g., Woods v. Merkelbach*, 2024 WL 1624171 at *3 (E.D. Cal. April 15, 2024) ["Here, the court construes defendant's motion as posing a facial attack under Rule 12(b)(1) because in it defendant contends that the allegations of plaintiff's complaint are insufficient for purposes of establishing Article III standing. Although defendant does rely on documents outside of the complaint, the only such documents are subject to judicial notice, which are ordinarily considered by the court when it is analyzing the complaint on its face."]; *see also Maciel v. Rice*, 2007 WL 4525143 at *3 (E.D. Cal. Dec. 18, 2007) ["A Fed. R. Civ. P. 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, subject matter jurisdiction is challenged solely on the basis of the allegations contained in the complaint (along with any undisputed facts in the record or of which the court can take judicial notice)."]. With a Rule 12(b)(1) "facial" attack motion such as this, the court assumes the allegations to be true. *See id.*; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Unripe claims are properly dismissed without prejudice. *Association of American Med. Colleges v. United States*, 217 F.3d 770, 784 n. 9 (9th Cir. 2000).

### b. This Action is not Ripe for Litigation Because There has yet to be a Final Determination on the Buyer's Development Application

The Takings Clause of the Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." (U.S.

1  Const., Amend. V.; *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 184 (2019).) Takings claims come in two forms: (1) permanent, physical occupation claims; and (2) regulatory. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 684 (9th Cir. 1993). A physical taking occurs "when the government physically intrudes upon private property either directly or by authorizing others to do so." *Id.* (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).) A regulatory taking occurs "when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property." *Levald, supra*, 998 F.2d at 684. Courts should not consider the merits of a takings claim unless it is ripe for adjudication. *Ralston v. County of San Mateo*, 2022 WL 16570800 at *1 (9th Cir. 2022).

Plaintiff here alleges a regulatory taking. (*See* Complaint at ¶ 32.) A regulatory takings claim ripens when "there [is] no question … about how the 'regulations at issue apply to the particular land in question.'" *Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 478 (2021). The United States Supreme Court in *Williamson County* previously articulated two independent ripeness requirements for regulatory takings claims. *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-195. The second requirement—that a plaintiff must first litigate the matter in state court before bringing a federal action pursuant to 42 U.S.C. § 1983—has been overruled. *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019). The first requirement, however, is still good law: "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County, supra*, 473 U.S. at 186. "[A] final decision exists when (1) a decision has been made 'about how a plaintiff's own land may be used' and (2) the local land-use board has exercised its judgment regarding a particular use of a specific parcel of land, eliminating the possibility that it may 'soften[] the structures of the general regulations [it] administer[s].'" *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1147 (9th Cir. 2010).

Plaintiff has not alleged that the City has come to a final decision "about how [] plaintiff's

own land may be used." *Id.* Rather, plaintiff merely alleges that the City's Planning Director "wrote Plaintiff stating that the City would require, as a condition of any development of the Subject Property, the construction of the 6th Street Dedication, and that the City would not provide any compensation to Plaintiff for the dedication." (Complaint at ¶ 24, lines 22-24.) This singular allegation is insufficient to establish that plaintiff's takings claim is ripe, for two reasons.

First, assuming the truth of the matter in that the City's Planning Director has so expressed the above opinion, that opinion does not and cannot serve as the City's final decision on the development application. *Ralston v. County of San Mateo*, 2022 WL 16570800 at *2 (9th Cir. 2022). In *Ralston*, the plaintiff argued that his takings claim was ripe "based on three informal responses he received from the County's Community Development Director and Board of Supervisors." *Id.* Ralston argued that these responses meet the "relatively modest" finality requirement articulated in *Pakdel*. *Id.* The Ninth Circuit rejected this argument, holding: "The Director's preliminary opinions that building a house on Ralston's property may face difficulty do not serve as the County's final decision on the matter." *Id.*[1] Accordingly, the City Planning Director's alleged statements regarding the buyer's development application do not constitute a final decision and thus cannot serve as a basis for arguing the takings claim is ripe.

Second, and even assuming the City had accepted, denied, or accepted in part and denied in part the buyer's development application, avenues would still exist for the buyer to either seek a variance from (Sacramento City Code § 17.502.200) or appeal (Sacramento City Code § 17.502.210) the City's decision. (Request for Judicial Notice, ¶¶ 1, 2.) It is at that point—and only at that point—that the City's decision on the buyer's application would be considered final. *Williamson County, supra*, 473 U.S. at 173 ["Although respondent's plan for developing its property was rejected, it did not then seek variances that would have allowed it to develop the property according to its proposed plat."]; *see also Pakdel, supra*, 952 F.3d at 1167 ["Allowing a takings claim to proceed when a variance or exemption was not requested at the proper

---

[1] Insofar as it applies to plaintiff's state law claim for Inverse Condemnation pursuant to the California Constitution, the City is immune from liability based on any alleged statements by the City's Planning Director. Gov. Code § 818.8 ["A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."].

7

junctures would undermine the purposes of the finality requirement by eliminating local officials' opportunities to exercise discretion and by presenting federal courts will ill-defined controversies."]; *Hoffman Brothers Harvesting, Inc. v. County of San Joaquin*, 2021 WL 4429465 at *5 (E.D. Cal. Sept. 27, 2021) ["Plaintiffs' failure to include any allegations of requesting an exemption or any kind of relief from the new zoning requirements does not satisfy the finality requirement of *Williamson*."]. Plaintiff has alleged no such relief here. (*See generally,* Complaint.)

Again, the Supreme Court has held that there must be "no question" about how the regulations apply to a plaintiff's parcel. *Pakdel, supra*, 594 U.S. at 478. That cannot be said to be the case here. It is entirely possible that plaintiff could be granted a variance, or even that the City elects to scrap the north-south grid extension altogether. Indeed, the West Broadway Specific Plan only *proposes* that 6th Street continue extending south. It is not for certain, nor is the outcome of the buyer's development application.[2]

## IV. CONCLUSION

Because the outcome of the buyer's development application is unknown, this lawsuit is premature. The City therefore requests the Complaint be dismissed without prejudice until such time as plaintiff is able to allege a ripe takings claim.

DATED: September 3, 2024

SUSANA ALCALA WOOD,
City Attorney

By: 
GÖKALP Y. GÜRER
Senior Deputy City Attorney
Attorneys for the
CITY OF SACRAMENTO

---

[2] The foregoing ripeness analysis applies equally to plaintiff's second claim for Declaratory Judgment. *Westlands Water Dist. Distribution Dist. V. Natural Resources Defense Council, Inc.*, 276 F.Supp.2d 1046, 1052-53 (E.D. Cal. July 9, 2003) ["The Declaratory Judgment Act provides that '[i]n a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' 28 U.S.C. § 2201; see also Fed.R.Civ.P. 57. The Act itself thus incorporates Article III's limitations and requires a specific finding that the case presents an 'actual controversy.'"].

It also applies to plaintiff's third claim for Inverse Condemnation. *Hoffman Brothers Harvesting, Inc. v. County of San Joaquin*, 2021 WL 4429465 at *4-5 (E.D. Cal. Sept. 27, 2021) ["Plaintiffs assert an unconstitutional takings claim under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 1, 7(a), and 19(a) of the California Constitution … they have not sufficiently alleged a takings claim and Defendants' motion to dismiss on this basis is GRANTED."].